(Decided February 3rd 1865.)

---

WILLIAM Y. DAY *vs.* WALTER T. ALLENDER.

PUBLIC WAYS: EVIDENCE: THE ACTS OF 1704, CH. 21, 1794, CH. 52, AND 1825, CH. 219, SEC. 14, being affirmative in their character, and not conflicting with any rights which may have been previously or subsequently acquired by the public, are not to be construed as doing away with the modes of establishing and proving the existence of public roads recognized by the Common Law.

—— : —— : —— : PRESUMPTIONS.—A plea of right of public way may be sustained by evidence of uninterrupted user by the public for twenty years; and the jury may infer from the circumstances attending the user, that the way was a public highway by long or immemorial usage, or dedication.

PRIVATE WAY: EVIDENCE: COMMON USER.—The proof of a *private way* must correspond with the description, but the allegation of a private way may be supported by evidence of a public way; for in these cases the latter includes the former. If the proof is of a *use* common to all others, as well as the party claiming the way, it does not establish a *private way*.

Day *vs.* Allender.

THE PRESUMPTION OF A GRANT OF A PRIVATE WAY, must be founded in proof of an adverse, exclusive and uninterrupted enjoyment for twenty years, by the individual seeking to establish the right of way, or those under whom he claims; and although this presumption may be made, according to the authorities, from the character of the user, yet when it is shown by the evidence, that the easement was enjoyed in common with others, the presumption in favor of the individual ceases.

APPEAL from the Circuit Court for Baltimore County.

This was an action of *trespass vi et armis* brought by the appellee against the appellant, to the November term 1854. The declaration which contained five counts, charged, with some variations in each count, as to the place and mode, a forcible trespass by the appellant upon the property of the appellee and the cutting down by the appellant of a certain fence of the appellee. The appellant pleaded: 1st. Not guilty; 2nd. A public highway across the *locus in quo,* and justifying the cutting down of the fence erected by the appellee, because it obstructed such public highway;—3rd. A private right of way from "Taylor's Mount," the residence of the defendant, through the *locus in quo* to the Philadelphia Turnpike Road, created by express grant in 1810, by the then owner of the *locus in quo,* justifying in like manner the destruction of the fence;—4th. *Liberum tenementum* in the defendant in the *locus in quo;*—5th. A prescriptive private right of way.

The plaintiff then replied, joining issue upon the first plea, likewise upon the second and third pleas, and also new assigning and alleging in his replications to said second and third pleas, distinct trespasses *extra viam,* joining issue also upon the fourth plea, also upon the fifth plea, and new assigning in like manner trespasses *extra viam.* Demurrers were filed by the defendant to the replications to the 2nd, 3rd and 5th pleas, but they were subsequently withdrawn, and issue joined upon them.

At the trial of the case a great deal of evidence was given setting forth the time, place, and manner of the alleged trespasses, tending to prove, on the part of the

defendant that the "Old Joppa Road" across which the fence destroyed by the appellant was erected by the appellee, was not included in the lines of the plaintiff's land as properly located: that even if included in his lines, the place of the alleged trespass was part of a public highway immemorially used by the defendant and all others having occasion to travel that way, though no record evidence of its ever having been regularly laid out was produced: also tending to prove the use open, continuous, adversary and under color of right by the appellant of the "Old Joppa Road" for more than forty years. Also that the Old Joppa Road is recognized in the following Acts of Assembly, viz: 1704, ch. 21, secs. 2, 3, 5. 1712, ch. 19. 1724, ch. 16. 1827, ch. 21, sec. 5.

The testimony on behalf of the plaintiff tended to show that the "Old Joppa Road" had never been regularly laid out, that it had long since ceased to be used, that in many places it had become impassable, and that even if it should be regarded either as a public or a private way, the defendant had committed a trespass by permitting his wagon to traverse a portion of the plaintiff's land out of the line of said road.

The details of the testimony offered on both sides sufficiently appear, for the purposes of the cause, in the prayers offered by the plaintiff and defendant, and upon which the main questions in controversy arise.

The prayers offered on the part of the plaintiff, which were excepted to, were as follows:

1st. That if they find that either of the closes or pieces of land described in the declaration, was owned by the plaintiff, and that being so owned he caused a fence to be erected across the Old Joppa Road, as stated in the evidence, for the purpose of obstructing the passage of the defendant along and over said pieces of land, and that the defendant was aware of such purpose, and without the consent of the plaintiff, cut down said fence, and also

65   v. 22

without such consent caused his wagon to be driven along and over both of said pieces of land, as testified by the witnesses Costa and Orso Day, then the plaintiff is entitled to recover upon the pleadings and evidence in this case, unless the jury find that the defendant has established affirmatively that he had a right of way over all the land of the plaintiff so traversed by him or his wagon; and in such case the burden of proof is on the defendant to make out such defence.

2nd. That there is no evidence, that at the time of the alleged trespass, the defendant had a right, either of private or public way, across the piece of land called in the evidence, Dr. Allender's private road.

3rd. The mere use of a road by individuals, no matter how general, or for however long a time, does not make it a public road.

The fourth, fifth and sixth prayers of the defendant, being those which were rejected by the Court, were as follows:

4th. If the jury find from the evidence, that the place where the alleged trespass was committed, is part of the Old Joppa Road, and that the same had been used immemorially as a common highway for all persons and carriages having occasion at all times to pass over said place, and that, during all that time, there never was any obstruction at said place, until the plaintiff erected a fence at said place, at the time stated in the evidence, and that the defendant committed the trespasses complained of, for the purpose of abating and removing said fence, at said place, then the plaintiff cannot recover for such abating and removing of said fence, although the jury may be satisfied that the fence so erected and removed, was placed within the lines of the plaintiff's land.

5th. If the jury find from the evidence that prior to the committing of the trespass complained of, the defendant has used that part of the Old Joppa Road where the

fence was erected by the plaintiff, (provided they find such erection,) for forty years, openly and uninterruptedly, without objection on the part of the plaintiff and those under whom he claims, then the jury may and ought to presume a grant of a right of way to the defendant over said part of said road, and the plaintiff is not entitled to recover in this action, in respect to any supposed trespass committed by the defendant in removing any obstruction on said part of said road, although the jury may find that such user by the defendant may have been in common with other persons.

6th. That the pleas of the defendant and the replications thereto, and issues joined thereon, do not entitle the plaintiff to give evidence of any trespass committed by the defendant in the places referred to by the defendant's said pleas, but the plaintiff must show trespasses by the defendant at other places than those mentioned and referred to in said pleas.

The Court below, (PRICE, J.,) granted the first three of plaintiff's prayers, rejecting the fourth: and granted the first three of the defendant's prayers, and rejected the fourth, fifth and sixth. Exception was taken by the defendant to the rejection of his fourth and fifth prayers, and to the granting of the first three of the plaintiff's prayers.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN, and WEISEL, J..

*J. Prentiss Poe,* for the appellant.

1st. That in Maryland, immemorial use is sufficient to establish a highway—that such immemorial use is proved in this case, and that consequently the appellant was not guilty of a trespass in destroying the fence unlawfully erected by the appellee across such highway. *Harrison vs. Young,* 9 *Georgia,* 359. *Stetson vs. Faxon,* 19 *Pick.,*

147–153. *Stump vs. McNairy,* 5 *Humph.,* 363. *Vooght vs. Winch,* 2 *Bar. & Ald.,* 668. *Rex vs. Lloyd,* 1 *Camp.,* 260. *Lansing vs. Wiswall,* 5 *Denio,* 213. 2 *Greenleaf on Evidence,* sec. 662. 2 *Hilyard on Real Estate,* 22. 1 *Law Reporter,* 506. *Regina vs. Petrie,* 30 *Eng. Law & Eq. Rep.,* 210. 3 *Archbold Crim. Law,* 607—609, 651, *notes. Reed vs. Northfield,* 13 *Pick.,* 97–98. *Coolidge vs. Learned,* 8 *Pick.,* 504. *Commonwealth vs. Cole,* 26 *Penna. St. Rep.,* 187. *Daniels vs. The People,* 21 *Ills.,* 442. *State vs. Wilson,* 42 *Maine,* 9. *Haywood vs. Charlestown,* 34 *New Hamp.,* 23. *Willey vs. Portsmouth,* 35 *N. Hamp.,* 303. *Hays vs. State,* 8 *Ind.,* 425. *Barrickman vs. Commissioners,* 11 *G. & J.,* 50–57. *Folger vs. Worth,* 19 *Pick.,* 108. *Washburn on Easements,* 101, 127. *Reimier vs. Stuber,* 20 *Pa. R.,* 458. *Kelly's Case,* 8 *Grattan,* 632. *Jennings vs. Tisbury, &c.,* 5 *Gray,* 73.

2nd. That should it be considered that record evidence of the creation and existence of a highway, is indispensable, and that no presumption of its establishment can be made from the fact of immemorial use by the public, yet in this case the appellant abundantly proved a private right of way growing out of an open, uninterrupted and adversary use of the place of the alleged trespass for more than twenty years. *Miller vs. Garlock,* 8 *Barbour,* 153. *James vs. Hayward, Sir Wm. Jones,* 222. *Lansing vs. Wiswall,* 5 *Denio,* 213. *Kent vs. Waite,* 10 *Pick.,* 138. *Moale vs. Mayor and City Council,* 5 *Md. Rep.,* 314. *Wright vs. Freeman,* 5 *H. & J.,* 467. *Cherry vs. Stein,* 11 *Md. Rep.* 22.

3rd. That upon the pleadings and evidence in this case, the appellant was not guilty of a trespass on any part of the appellee's land beyond the line of the Old Joppa Road. 2 *Greenleaf on Evidence,* sec. 662. 2 *Hilyard on Real Estate,* sec. 3. *Stafford vs. Coyney,* 7 *Barn. & Cress.,* 257. Act of 1837, ch. 287, sec. 2 and 3. Act of 1843, ch. 212, sec. 3. 2 *Greenleaf on Evidence,* sec. 635. *Darby*

*vs. Smith,* 2 *M. & Rob.,* 184. *Greene vs. Jones,* 1 *Saund.,* 300 *a, note g. Pratt vs. Groome,* 15 *East.,* 235. *Washburn on Easements,* 30.

*A. W. Machen* and *R. J. Gittings,* for the appellee.

Whatever theoretic views may be taken of the questions raised in the several prayers offered to the Court on one side or the other, the plaintiff was necessarily entitled to a verdict; and as he claimed at the trial and received from the jury only nominal damages, the judgment ought not to be disturbed, even if some of the propositions contended for by the appellant were abstractly right. *Dakin vs. Crofts,* 9 *Gill,* 1. *Glenn vs. Rogers,* 3 *Md. Rep.,* 322.

I. Upon the really important question, raised in the prayers on both sides, but most distinctly presented in the plaintiff's third prayer, we contend:

That by the law of Maryland the use of a road by individuals, though continued for twenty years and upwards, is not enough to give it the character of a public road.

(1.) We shall insist that to constitute a public road in this State—however the law may be elsewhere—it must be laid out as such by competent authority; or at all events, there must be some *acceptance* of it as a public road by some competent public officer, or body.

This doctrine has been repeatedly asserted in the District and Circuit to which Baltimore and Harford Counties have belonged. And in the present case, the learned Judge of the Circuit Court only followed the express and reiterated decisions of his predecessor, Judge Constable, and of Chief Justice Archer and his associates in the old County Court.

1. Since 1704, which was before the town of Joppa existed, there never has been a time in Maryland, or, at least, in Baltimore County, when a registry was not required to be kept of all public roads, and when the County authorities were not required to fulfill the duty

of keeping all public roads in repair. Acts of 1671, ch. 1; 1704, ch. 21; 1794, ch. 62; 1825, ch. 219, sec. 14.

(2.) Upon grounds which are entirely applicable to our circumstances in Maryland, it has been held by the Court of Appeals of Virginia, that the mere user of a road by the public—however long continued—will not constitute it a public road; and that such user is not sufficient evidence of dedication and acceptance. *Kelly's Case*, 8 *Gratt.*, 632. And this doctrine has received the sanction of the Supreme Court of the United States, as a part of the common law of this country. *Irwin vs. Dixion*, 9 *How.*, 33.

(3.) Use, no matter of what duration, cannot give the public a right in the road, unless such use be shown to have been adverse to the owner. It must also have been exclusive. And where the owner himself uses the road for his private purposes (as here,) the concurrent use by the community—though continued for fifty years, affords no ground for the presumption of the existence of a public way. *Irwin vs. Dixion*, 9 *How.*, 10, 33. *Hall vs. McLeod*, 2 *Met. Ky.*. 98, (1859.) *Morse vs. Stocker*, 1 *Allan*, 153, 154, (1861.) *Badeau vs. Mead*, 14 *Barb.* 328, 338. Four things are declared by the Supreme Court, in their opinion, as delivered by Justice Woodbury, to be essential, to enable a public use of a road to ripen into evidence of a right,—(1) Such use must be adverse: (2) It must be exclusive: (3) It must be acquiesced in by the owner: (4) The road must be treated by the public authorities as a highway in connection with the user and occupation. *Irwin vs. Dixion*, 9 *How.*, 33. Three, at least, of these conditions are unfulfilled in the present case.

In support of these principles we cite also, *Commonwealth vs. Russell*, 1 *Law Reporter, N. S.*, 505, Opinion of Rogers, J. *Bowers vs. Suffolk Man. Co., Cush.*, 331. Opinion of Morton, J., 19 *Pick.*, 411–18, approved, 4

*Cush.*, 340. *Hemphill vs. City of Boston*, 6 *Cush.*, 196, 197. *People vs. Beaubien*, 2 *Doug. Mich.*, 256. *Lessee of Fulton vs. Mehrenfield*, 8 *Ohio, N. S.*, 447, 448. *Tegarden vs. McBean*, 33 *Miss.*, 283. *Holdane vs. Trustees of Cold Spring*, 21 *N. Y.*, 474. *R. vs. St. Benedict*, 4 *B. & Ald.*, 447. *Hutto vs. Tindall*, 6 *Richardson, S. C. Rep.*, 396. *Stacey vs. Miller*, 14 *Mo.*, 579. *Martin vs. People*, 23 *Ills.*, 395. *Harding vs. Jasper*, 14 *Cal.*, 642.

II. The Court at all events ruled correctly.

(1.) The plaintiff's third prayer, upon any view of the law, was properly granted, for a public road can never be inferred to exist from mere use by individuals. A user which is to serve as the foundation of a right, must be under a claim in accordance with such right. To test this, let the contrary proposition be stated: The mere use of a road by individuals, if general, and continued twenty years or more, makes it a public road. Could that be maintained?

(2.) The defendant's fourth prayer was clearly wrong, for the part of the Old Joppa Road in question could not be a highway without having one of its termini at least in some public place; which the prayer does not put to the jury to find. *Shelby vs. The State*, 10 *Hump. (Tenn.*,) 165. Even a *cul de sac*, it has been held, cannot by dedication or prescription, become a public way. *Woodyear vs. Hadden*, 5 *Taunt.*, 126, 140, 141, 142. *Wood vs. Veal*, 5 *B. & Ald.*, 456, 457. *Holdane vs. Spring Village*, 21 *N. Y.*, 474.

Again, there is no evidence of immemorial use as a highway. The public could not acquire a highway by prescription over lands owned by the State or the Proprietary. Before the Patent of St. George Better Secured, which, according to the appellant's theory of location, (see his third prayer,) was the first grant which covered the *locus in quo* in the Old Joppa Road, Joppa had ceased to be: and even at the date of the older Patent, St.

George, all occasion for the road had passed away. *Phipps vs. The State,* 7 *Blackf.,* 512. *Com. Dig., Praescription,* (*F. I.*)

The evidence shows that the road, if it ever was a common highway, had been abandoned by the public; and where the general public cease to use a road, it has been decided that the continued use of it by private individuals in the immediate vicinity, for the purposes of mere private convenience, furnishes no evidence sufficient to repel such presumption of abandonment by the public. *Shelby vs. The State,* 10 *Hump.* (*Tenn.,*) 165. All public roads, (as before stated) were always by law, to be worked and kept in repair by the county authorities; but this road never has been thus "kept in repair as other public roads are." It is clear it is not the duty of the county to repair this road; and no road can be a public road, which the county is not obliged to repair.

III. The defendant's fifth prayer, touching his alleged private way over the bed of the Old Joppa Road, is bad, because it omits to require the jury to find that he claimed and used it as his private road. If he used it upon the ground that it was thought to be a public road, and treated it as a public road, it is clear he had no adverse enjoyment of it as a private way; for the jury cannot be warranted in referring the claim of right to any other ground than that the party himself insisted on at the time. *Campbell vs. Wilson,* 3 *East.,* 301, 302. *Woolrych on Ways,* (4 *Law Lib.,*) 19 *marg. Harper vs. Parish of the Advent,* 7 *Allen,* 478. And if the road was once public, but ceased to be so by abandonment in consequence of the adoption of another road, or of the desertion of Joppa, the continued use of it by Day for his private convenience being thus explained, cannot be considered as adverse, or afford foundation for the presumption of a grant. *Commonwealth vs. Newburg,* 2 *Pick., per* PARKER, C. J. Such circumstances bring a case under the influ-

Day *vs.* Allender.

ence of the criterion stated in 2 *Wms. Saund.*, 175, note (*a.*) "Where the original enjoyment was consistent with the fact of there being no conveyance, the true question to be presented to the jury is, whether in fact a conveyance has ever been made."

Again, it is in evidence that Dr. Allender himself used the bed of the Joppa Road for his own purposes. It led to his woods. In connection with his private lane between the two Bennetts, it was his outlet to the turnpike. Under such circumstances a use allowed to a neighbor must be referred rather to a license than to an adverse claim. *Hall vs. McLeod*, 2 *Metc. Ky.*, 98. *Pue vs. Pue*, 4 *Md. Ch. Dec.*, 386. *Wright vs. Freeman*, 5 *H. & J.*, 467. *Turnbull vs. Rivers*, 3 *McCord*, 131, 139. *First Parish in Gloucester vs. Beach*, 2 *Pick.*, 60, note.

If it be left doubtful whether the occupation were adverse and under a claim of right, or by favor, the party setting up the right of way must fail. *Sargent vs. Ballard*, 9 *Pick.*, 251, 256. *Smith vs. Hannah, Court of Appeals, Dec.* 7, 1840, *Judgmt. R. W. G., No.* 160, 522. It is not competent to presume a grant of a private way where such way leads to no public place. See recital in Act 1785, ch. 49, and 1834, ch. 253. Nor where the track is through unenclosed lands, and is shifting. *Kilburn vs. Adams*, 7 *Met.*, 33.

The prayer is objectionable also in not leaving it to the jury to find the truth, upon all the circumstances. *Livett vs. Wilson*, 3 *Bing.*, 115. *Best on Pres., secs.* 90, 110, (47 *Law Lib.*) *Hartwright vs. Badham*, 11 *Price*, 383, *per* GRAHAM, B.

IV. The defendant's sixth prayer, which raises a question of pleading, is clearly bad. The defendant's counsel omit to take notice that issues are joined not only on the new assignments, but on the traverses taken by the plaintiff to the several special pleas of the defendant. It was precisely to guard against being tricked (as Sergeant

66      v. 22.

Williams expresses it) by some such sharp rule of pleading, that the plaintiff's counsel in new assigning, took care also to traverse the several pleas. The course taken by us in replying, is that which is recommended by Sergeant Williams for such a case. 1 *Wms. Saund.*, 300 e, note (6.) By this course the right is secured to the plaintiff to recover for every trespass on every part of his land which the defendant has not succeeded in covering ,by his justifications; that is to say, for all trespasses, whether on the bed of the old Joppa Road, or on Dr. Allender's lane leading from the old road to the turnpike, or on Dr. Allender's woodland adjacent to the old road bed. And this answers the third point on the defendant's brief, for, while it is true, as laid down in 15 *East.*, 235, and 1 *Wms. Saund.*, 300 a, that on the issue joined on the new assignment, evidence cannot be given of any trespass committed in the place mentioned in the defendant's plea, it is yet perfectly competent for the plaintiff not to limit himself to his new assignment, but also, if his declaration lays trespasses "on divers days and times," (as ours carefully does in every one of the counts) to traverse the plea; and upon this issue the evidence which would not be pertinent on the issue on the new assignment, is perfectly appropriate. 1 *Wms. Saund.*, 300 c, 300 d, 300 e, note (6.) *Loweth vs. Smith*, 12 M. & W., 582. *Webber vs. Sparkes*, 10 M. & W., 486. *Moore vs. Webb*, 1 C. B. N. S., 673, (87 *Eng. C. L. Rep.*) *Gaither vs. Blowers*, 11 *Md.*, 536.

V. We submit that there can be no question as to the propriety of granting the plaintiff's first and second prayers. The former only asks that the defendant, to make his alleged right of way effectual to bar the action, must show that it reached across both of the pieces of land described in the declaration and owned by the plaintiff, and both whereof the defendant traversed with his wagon. The other of said prayers puts the unquestion-

able proposition that the defendant had given no evidence of a right of way, either private or public, over the piece of land known as the plaintiff's private road.

VI. The defendant's counsel have cited the Acts of 1837, ch. 287, secs. 2 and 3, and 1843, ch. 212, sec. 3, relating to recovery for damages done by stock, which can scarcely be gravely contended to apply to such an action as this, as it could only do so on a ground which would very summarily dispose almost of every action of trespass *quare clausum* brought in Baltimore County since their passage. In answer it is sufficient to say that this is not a case of "trespass by stock." That the provision in question has been supposed to have reference only to the summary proceeding provided by the Act of Assembly, and that proceeding to be but a cumulative remedy: That being a statutory limitation of actions, it ought, at all events, to be pleaded.

BOWIE, C. J., delivered the opinion of this Court.

The appellant, the defendant below, among other pleas, relied on: 1st. A common and public highway over the *"locus in quo."* 2nd. A private way appurtenant to his own land. The exceptions are taken to the granting of the third prayer of the appellee, and refusal to grant the fourth and fifth prayers of the appellant, involving the competency of the evidence to support these pleas.

The third prayer of the appellee, and fourth of the appellant, present conflicting propositions. The appellee affirms—*"the mere use of a road by individuals, no matter how general or for however long a time,* does not make it a public road." This prayer, as interpreted by us, is the converse of the appellant's fourth prayer, which substantially declares, that if the *"locus in quo"* had been immemorially used as a common highway, and the appellant committed the acts complained of, for the purpose of abating and removing an obstruction thereon, the appel-

lee could not recover for such acts. We deem the expressions "public roads" and "public highways," as used in these prayers, to be synonymous, and the prayers of the appellee as equivalent to asserting, that use of a road, however general or however long, does not make it a public road. If the prayer was not meant to convey this idea, it was calculated to mislead the jury, and should have been rejected. The qualifying words *mere use by individuals*, cannot restrain the subsequent expressions *"no matter how general"* or *"for however long a time."*

The learned counsel for the appellee, in their briefs and argument, have earnestly contended, that the theory of their third prayer, has been repeatedly asserted in the District and Circuit to which Baltimore and Harford Counties belong, and the learned Judge below, in so ruling, only followed the express and reiterated decisions of the learned Judges who had preceded him. With the highest respect for the learning of the distinguished Judges referred to, we can only regret that their decisions have not come to us in some authoritative form, in which we could recognize them as precedents. In the absence of any adjudicated case, in a Court of final resort in this State, we must have recourse to the text books, and decisions in the English and American reports.

A summary of the English law, on the manner of establishing highways, will be found in *Woolrych on Ways*, 4 *Law Lib.*, 9. "With respect to a highway,—in the words of HALE, C. J.,—much depends upon common reputation. And if the owner of land permit the public to pass and repass over his soil without molestation or any assertion of his rights, for some time, the law will presume a dedication of the way to general use. Much discussion has arisen as to the period which must elapse before such a dedication will be presumed, and the attention of the reader will be presently directed to it. It seems therefore, that a highway may be claimed, first

from time immemorial, and next by reason of such sufferance of public use within time of memory as will lead to the conclusion, that the original proprietor had designed a common benefit for all the king's subjects. * * * The same principle appears to be applicable to common ways. * * * If evidence be adduced to show, that a particular road has been used as a public way and always considered as such, it seems that a claim of highways will be made out."

The American Law on this subject, is happily condensed in section 662 of *Greenleaf's Evidence*, vol. 2nd, title "Way." "The existence of a public way is proved either by a copy of the record, or by other documentary evidence of the proper laying out by the proper authorities, pursuant to statutes, or by evidence either of immemorial usage, or of dedication of the road to public use. * * * Dedication may be presumed even against the sovereign; and in all cases; unless the state of the property was such that a dedication of the soil was impossible. The right of the public does not rest upon a grant by deed, nor upon a twenty years possession, but upon *the use of the land*, with the assent of the owner, for such a length of time, that the public accommodation and private rights, might be materially affected by an interruption of the enjoyment."

The effect in the matter of ways, which is given in many cases to *a user*, in establishing a public way, and a dedication of a way to public use, are so nearly identical, that they can hardly be treated of separately. *Washburn on Easements*, 125, sec. 1. The appellee's theory excludes the idea of a right of way in the public, being established by user, dedication or prescription. In *Folger vs. Worth*, 19 *Pick.*, 108, which was an action of trespass for taking and carrying away sheep, the defendant pleaded that he was a field driver, and required by law to take up sheep going at large, in the public highways. SHAW, C.

J., said: "It appears by the facts, that there is no record of the laying out of the highways, yet that the streets of the town have been used as highways from time immemorial. It is now we think too late to contend, that the existence of a highway cannot be proved by immemorial usage." In *Stetson vs. Faxon, Ib.*, 153—an action of trespass for obstructing a street by projecting a warehouse into it, whereby the plaintiff's warehouse was obscured, and special damages ensued, PUTNAM, J., said: "The city is in some respects to be regarded as a county, it has authority to lay out and to discontinue public highways, as well as town ways, within its limits, and public highways may be proved by prescription, as well as by dedication, within those limits as they may be in any other part of the Commonwealth." The case of *Hutto vs. Tindall*, 6 *Richardson S. C. Rep.*, 396, cited in the argument by the appellant, resembles this in many particulars. There the jury was instructed: "that the *mere use* of a *road* over unenclosed *woodland* could not confer a right of way, as a neighborhood road or private path, unless the use was shown to be adverse," &c. But it was admitted that: "Public roads of any kind, can be established only by public authority, or by dedication, or by long use, which though not strictly prescription, bears so close an analogy to it, that it may be expressed by that term. Less than twenty years use is insufficient to create either a public or a private road. The same period of prescription is applied to both kinds. From a use for that period of time, a grant may be presumed." It is said: "As the presumption of a right of way arises from the exercise of a privilege adverse to the right of property, and acquiescence in the exercise of that privilege, a distinction must therefore be observed between a claim of a way through enclosed and cultivated land, and of a way over unenclosed land. In the former case, the mere use is an invasion of property and a trespass; and acquiescence or

submission to the exercise of a privilege under circumstances which make it actionable, may justify the inference of a legal right in the person who exercises the privilege." The *mere use* is recognized in this case, as sufficient to establish a right of way under certain circumstances. The appellees prayer repels the presumption under any conditions of use, however general or however long. The Court of Appeals of Virginia, in *Kelley's Case,* 8 *Grattan,* 634, after repudiating the doctrine of establishing a public road by dedication, say: "But the cases in England go further, and seem to decide that from *mere user* both dedication and acceptance may be inferred, so that if a man open his land, so that the public pass over it continually, after a very few years, the public will acquire a right of way, unless some act to show that he intended, only a license to the public to pass over the land, and not to dedicate a right of way to the public." Dissenting from which, they conclude: "From the wide difference in the state of the two countries, we do not think that the decisions of the English Courts ought to have much weight with the Courts of this State, on questions upon the establishment of highways."

The appellees insist, that the same considerations which induced the Court of Appeals of Virginia to reject the doctrine of user and dedication, as applied by the English Courts to public highways, should prevail with the Courts of Maryland. In support of this argument, they urge, that since 1704 there never has been a time in Maryland, when a registry was not required to be kept of all public roads, and when the county authorities were not required to keep all public roads in repair. Whence it is inferred, that the modes of establishing and proving the existence of public roads, recognized by the Common Law, no longer exist. They refer to 1704, ch. 21; 1794, ch. 52, and 1825, ch. 219, sec. 14. A statute made in the affirmative, without any negative expressed or

implied, does not take away the Common Law. *Dwarris on Statutes*, 637. These Acts do not negative any rights which may have been previously, or subsequently acquired by the public; they are mainly directions to certain officers, named in them, as to the mode of discharging certain duties prescribed. In Massachusetts, and many other States, there are statutes declaring, that "No way opened and dedicated to the public use, shall become chargeable upon any city or town, unless laid out in the manner prescribed by statute." Notwithstanding which, in the case of *Jennings vs. Tisbury*, 5 *Gray*, 73, this was held not to touch "cases of public ways by prescription," and "that a large proportion of the public highway or town ways stand upon no other title but prescription."

From this brief analysis of some of the leading cases, most of which are collected and commented on with great perspicuity and force, in the late treatise of *Prof. Washbourne on Easements*, we think the preponderance of authority is in favor of the positions that a plea of right of public way may be sustained by evidence of uninterrupted user by the public for twenty years; and the jury may infer from the circumstances attending the user, that the way was a public highway by long or immemorial usage, or by dedication. *Vide p.* 13. It follows from these premises, that the Court below erred in granting the plaintiff's third prayer and rejecting the defendant's fourth.

The appellant's fifth prayer substantially affirms that the use of the *locus in quo*, by himself and those under whom he claims, for forty years, without objection on the part of the appellee, warrants the presumption of a grant of a right of way over the land to the appellant, notwithstanding that user may have been in common with other persons.

The proof of a private way must correspond with the the description, (*vide* 2 *Greenleaf Ev.*, sec. 659;) but the

allegation of a private way may be supported by evidence of a public way; for in these cases the latter includes the former. *Ibid.* If the proof is of a use common to all others as well as to the party claiming the way, it does not establish a private way. *Vide* sec. 659, note *l.* *Prince vs. Wilbourne*, 1 *Rich.*, 58.

The presumption of a grant to the appellant must be founded on proof of an adverse, exclusive and uninterrupted enjoyment for twenty years, by him or those under whom he claims; and although this presumption may be made according to the authorities, from the character of the user itself, (*Vide* 8 *Barbour*, 153; 3 *East.*, 297; 14 *Mass.*, 53,) yet when it is shown by the evidence, the easement was enjoyed in common with others, the presumption in favor of the individual ceases.

The appellant's prayer was too narrow in this respect, the facts relied on would have justified the finding of a public way, or as some of the authorities express it, a common or town way, by prescription or dedication, but not a grant to the appellant individually.

The fifth prayer was therefore properly overruled. There being error in granting the appellee's third prayer and rejecting the appellant's fourth, the judgment below must be reversed, with leave to the appellee to take out a *procedendo.*

> *Judgment reversed,*
> *with leave to the appellee to take out a procedendo.*

(Decided March 10th 1865.)